UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────────────────x

SANDRA LEMONIER, individually and on behalf
of her minor children, J.B. and J.M, and BILLY      Case No. 18 Civ. 1888 (NGG) (JO)
MALDONADO, JR.,
                                                    **AMENDED COMPLAINT**
        Plaintiffs,                                **AND JURY DEMAND**

    -against-

CITY OF NEW YORK and POLICE OFFICER
LEONARD CLARKE, SHIELD NO. 27183,

        Defendants.
──────────────────────────────────────────x

      Plaintiffs Sandra Lemonier, Billy Maldonado, J.B., and J.M, by and through their attorneys, Cuti Hecker Wang LLP, for their Amended Complaint allege as follows:

## NATURE OF THE ACTION

    1.    Early on the morning of Thursday, October 5, 2017, Plaintiffs Sandra Lemonier, Billy Maldonado, Jr., and Sandra's children, Plaintiffs J.B. and J.M. (ages 10 and 5), were sleeping in Ms. Lemonier's Brooklyn apartment.

    2.    At around 6:00 a.m., approximately a dozen police officers forced the door open and stormed into the apartment. The officers waved large guns around as they moved through the apartment, and many wore SWAT uniforms with masks and shields. One of the officers handcuffed Mr. Maldonado, threw him to the floor, kneed him in the back, and pointed a gun at his head.

    3.    The police officers proceeded to ransack the apartment, cutting open mattresses and a couch, kicking holes in doors, and throwing Plaintiffs' property everywhere, including the

1

children's clothes and toys. The children, one of whom has a heart murmur, were shocked and traumatized by the officers' presence and behavior, and remained shaken for months afterwards.

4. The officers arrested Mr. Maldonado for possession a small amount of marijuana that was found in the apartment, but the case was never prosecuted.

5. Defendant Clarke is the police officer who applied for the no-knock search warrant that precipitated this highly intrusive, military-assault-style search. The affidavit that Defendant Clarke submitted in support of the no-knock search warrant was facially defective because it failed to offer any particularized basis to be concerned about safety or the destruction of contraband, in violation of clearly established United States Supreme Court precedent.

6. The police file regarding the police investigation leading up to this no-knock search warrant contains no information suggesting that Defendant Clarke had any particularized reason to be concerned either about officer safety or the destruction of contraband in connection with the execution of the warrant.

7. In fact, Defendant Clarke did not at any time have any information that gave rise to any particular basis to be concerned that if the search warrant were executed after knocking and announcing, officer safety would be compromised or contraband would be destroyed.

8. Moreover, upon information and belief, Defendant Clarke withheld from the judge who signed the no-knock search warrant material information that would have negated the conclusion that a highly intrusive no-knock search was lawful, including that the target did not live in the apartment, which was leased by a woman with no criminal record.

9. Upon information and belief, Defendant Clarke is not a rogue officer, and his decision to submit a facially deficient no-knock search warrant affidavit in plain violation of clearly established United States Supreme Court precedent was not an outlier. Rather, upon

2

information and belief, it is the policy, practice, and custom of the New York City Police Department to cause its officers to seek and execute no-knock warrants in narcotics cases based only on the generalized concern about contraband destruction that the United States Supreme Court has squarely held is legally insufficient, and that the City systemically fails to train, monitor, and discipline its officers with respect to the legal requirements for obtaining no-knock search warrants.

## JURISDICTION AND VENUE

10. This action arises under the United States Constitution, 42 U.S.C. §§ 1983 and 1988, Article I, § 12 of the New York State Constitution, and New York common law.

11. This Court has jurisdiction pursuant to 28 U.SC. §§ 1331, 1343(a), and 1367.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

13. Plaintiff Sandra Lemonier resides in Brooklyn, New York at 587 Gates Avenue, Apt. 4A.

14. Plaintiff Billy Maldonado, Jr. resides in Brooklyn, New York at 1578 Sterling Place, Apt. 1C. On the day in question, Plaintiff Maldonado was an authorized overnight guest at 587 Gates Avenue, Apt. 4A.

15. Plaintiff J.B. resides in Brooklyn, New York at 587 Gates Avenue, Apt. 4A. He is 10 years old and the son of Plaintiff Sandra Lemonier.

16. Plaintiff J.M. resides in Brooklyn, New York at 587 Gates Avenue, Apt. 4A. He is 5 years old and the son of Plaintiffs Sandra Lemonier and Billy Maldonado, Jr.

17. Defendant City of New York ("City") was and is a municipality that is a political subdivision of the State of New York. At all times relevant hereto, defendant New York City,

acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including without limitation the defendant officer named here. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel understand, are adequately trained about, and obey the constitutions and laws of the United States and the State of New York.

18. At all times relevant hereto, Defendant Police Officer Leonard Clarke, Shield No. 27183 was a police officer and member of the NYPD. With regard to all relevant events, Defendant Clarke was acting under color of state law and within the scope of his capacity as an agent, servant, and employee of the City.

## JURY DEMAND

19. Plaintiffs hereby demand a trial by jury on all of their claims in this action.

## FACTUAL ALLEGATIONS

### Clearly Established Legal Principles

20. The following legal principles have been clearly established by controlling case law, including controlling case law from the United States Supreme Court and the United States Court of Appeals for the Second Circuit.

21. The Fourth Amendment to the United States Constitution incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry.

22. This rule protects against personal injury that may result from violence by a surprised resident and the destruction of property caused by the forced entry, and it preserves those elements of privacy and dignity that can be destroyed by a sudden entrance.

23. Apart from its constitutional dimension, the knock-and-announce rule serves important practical interests. In many cases, announcement reduces the potential for violence by informing occupants of the home that the person seeking entrance is not a burglar or an invader, but a police officer acting on lawful authority.

24. The rule also curbs the needless destruction of private property.

25. Finally, like all protections of privacy, the rule serves basic interests of human dignity.

26. The knock and announce requirement can give way under circumstances presenting a threat of physical violence, or where police officers have reason to believe that evidence would likely be destroyed if advance notice were given.

27. In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

28. In order to justify a "no-knock" entry, the showing must be particular to the matter at hand.

29. It is impermissible to conclude that a no-knock entry is proper merely because all drug investigations involve contraband that may be easily disposable.

30. It is impermissible to conclude that a no-knock entry is proper merely because weapons are frequently possessed or used in connection with drug transactions.

**The No-Knock Warrant Affidavit in This Case**

31.     Attached as Exhibit A is a true and correct copy of the October 4, 2017 affidavit that Defendant Clarke submitted in support of the search warrant application in this case (the "Affidavit").

32.     Defendant Clarke swore under penalty of perjury that every statement in the Affidavit was true.

33.     Defendant Clarke understood that the judge who reviewed the search warrant application would rely on the accuracy and completeness of the Affidavit in determining whether the application for a no-knock search warrant was legally justified.

34.     In the Affidavit, Defendant Clarke swore that there were two separate "controlled buys" by paid confidential police informants ("CIs") that allegedly occurred at the doorway of Ms. Lemonier's apartment.

35.     In the Affidavit, Defendant Clarke swore that during each of these alleged controlled buys, a paid CI allegedly purchased marijuana from a black male allegedly standing in the apartment's open doorway.

36.     During each of these two alleged controlled buys, the amount of marijuana that allegedly was purchased near the apartment's doorway was $10.00.

37.     Defendant Clarke did not just seek a search warrant over these two alleged sales of $10.00 worth of marijuana. He sought a no-knock warrant.

38.     Defendant Clarke was among the decision-makers who decided to apply for a no-knock search warrant rather than a knock-and-announce search warrant.

39.     Defendant Clarke knew or should have known that in order to justify a no-knock entry, it is impermissible to claim that a no-knock entry is necessary merely because the drug

6

investigation at issue involved marijuana that might be easily disposable, or that weapons are associated with drug transactions.

40. Defendant Clarke knew or should have known that a no-knock entry is not justified unless there is a particularized showing either of a particular safety concern or a particular reason to be concerned that the suspected marijuana would be disposed of if the officers executing the warrant announced themselves before entering the apartment.

41. Despite these clearly established legal requirements, the Affidavit expressed no concern that anyone in the apartment was armed or otherwise dangerous. Moreover, the Affidavit failed to offer any particularized reason to be concerned that the marijuana Defendant Clarke believed was in the apartment might be destroyed if the knock-and-announce requirement were heeded.

42. The only reason Officer Clarke offered in the Affidavit for needing a no-knock warrant was the generalized concern that marijuana "can be easily and quickly disposed of and destroyed."

43. The Affidavit was facially deficient and facially defective.

44. No reasonable officer would have believed that the Affidavit provided information that met the legal requirements for obtaining a no-knock warrant.

45. The police file regarding the police investigation leading up to this no-knock search warrant contains no information suggesting that Defendant Clarke had any particularized reason to be concerned either about officer safety or the destruction of contraband in connection with the execution of the warrant.

46. In fact, Defendant Clarke did not at any time have any information that gave rise to any particular basis to be concerned that if the search warrant were executed after knocking and announcing, officer safety would be compromised or contraband would be destroyed.

47. Moreover, upon information and belief, Defendant Clarke withheld material information from the Affidavit.

48. Upon information and belief, prior to submitting the Affidavit, Defendant Clarke was aware that Plaintiff Maldonado did not reside in the apartment at issue at 587 Gates Avenue, Apt. 4A, but rather resided at 1578 Sterling Place, Apt. 1C.

49. Upon information and belief, prior to submitting the Affidavit, Defendant Clarke was aware that the apartment at issue at 587 Gates Avenue, Apt. 4A, was leased by Plaintiff Lemonier.

50. Upon information and belief, prior to submitting the Affidavit, Defendant Clarke was aware that Plaintiff Lemonier had never been convicted of a crime.

51. Upon information and belief, prior to submitting the Affidavit, Defendant Clarke was aware that Plaintiff Lemonier lived in the apartment at issue at 587 Gates Avenue, Apt. 4A, with one or more minor children.

52. Upon information and belief, prior to submitting the Affidavit, Defendant Clarke was aware that additional police surveillance had been conducted of the apartment at issue at 587 Gates Avenue, Apt. 4A, and that such surveillance had yielded no evidence of any criminal activity other than that alleged in the Affidavit.

53. Upon information and belief, prior to submitting the Affidavit, Defendant Clarke was aware that Plaintiff Maldonado spent a considerable amount of time away from the apartment at issue at 587 Gates Avenue, Apt. 4A, and that it was practicable and not unduly

burdensome for the NYPD to monitor the apartment and execute an announced search warrant at a time when Plaintiff Maldonado was away from the apartment.

54. Upon information and belief, before submitting the Affidavit, Defendant Clarke was aware of one or more facts that undermined the credibility of one or both of the CIs referenced in the Affidavit.

**The Raid**

55. Early on the morning of Thursday, October 5, 2017, Plaintiffs were sleeping in Ms. Lemonier's apartment located at 587 Gates Avenue in Brooklyn, New York.

56. Ms. Lemonier and Mr. Maldonado planned to take the children to school that morning, after which Ms. Lemonier had a job interview.

57. At approximately 6:00 a.m., Plaintiffs were awakened by the sound of the police officers drilling into the door of their apartment. The officers did not knock on the door, seek consent to enter the apartment, or indicate that they had a search warrant.

58. Defendant Clarke was one of the police officers who executed the warrant and conducted the search.

59. Neither Defendant Clarke nor any of the other officers involved in the raid had any information at the time of the raid that gave rise to any particular basis to be concerned that if the search warrant were executed after knocking and announcing, officer safety would be compromised or contraband would be destroyed.

60. At first, Mr. Maldonado did not know who was attempting to enter the apartment, and he tried to push the door shut to prevent their unwanted entry. But, after drilling through the door, the officers pushed the door open and numerous officers stormed into the apartment.

61. The officers waved heavy weapons around as they entered the apartment, including in the faces of the children. Many of the officers wore SWAT uniforms with masks and shields.

62. Immediately after entering the apartment, one of the officers handcuffed Mr. Maldonado and threw him on the floor. That officer then pressed his knee into Mr. Maldonado's back and pointed his gun at Mr. Maldonado's head.

63. Ms. Lemonier, Mr. Maldonado, and the young children were terrified. They had no idea why police officers had stormed into their home and no idea what would happen next.

64. J.M. screamed.

65. J.B., who has a heart murmur, expressed shock when the officers threw his father to the floor.

66. Both children were petrified.

67. Ms. Lemonier and Mr. Maldonado feared for the safety of their children and themselves.

68. The officers proceeded to ransack the apartment. They cut open mattresses and a couch. They kicked holes in the bedroom doors. They threw Plaintiffs' property everywhere, including the children's clothes and toys.

69. The officers eventually escorted Mr. Maldonado to a bedroom, where they repeatedly asked where the supposed gun was located. Mr. Maldonado repeatedly told them that he did not have a gun.

70. Despite furiously searching the apartment and interrogating Mr. Maldonado, the officers never found any gun, because there was no gun.

71. The officers eventually left the apartment. They arrested Mr. Maldonado for possession of a small amount of marijuana that the officers purported to have found in the apartment during their unlawful search.

72. Some of the officers drove Mr. Maldonado to the 84th precinct. On the way, they continued interrogating him about guns and insisting falsely that he had a gun hidden somewhere.

73. After Mr. Maldonado was held in a cell for several hours, he was given a desk appearance ticket and told he was free to leave.

74. Mr. Maldonado asked one of the officers whether he could see the search warrant that had purportedly authorized the search of the apartment. The officer refused to show him a warrant, asking him if he wanted to go home or if he wanted to go back in the cell. Mr. Maldonado left the precinct.

75. Upon information and belief, no formal criminal charge was ever brought with respect to Mr. Maldonado's arrest, and the officers apparently did not even enter the ticket he was given into the system.

76. The officers entered and searched Plaintiff Lemonier's home without consent and without any legal justification for doing so unannounced.

77. The officers damaged Plaintiffs' property by, *inter alia*, drilling through the apartment door, cutting open mattresses and a couch, throwing Plaintiffs' belongings around, and kicking open bedroom doors.

78. As a direct and proximate result of these unlawful actions, Plaintiffs have suffered and continue to suffer, *inter alia*, emotional harm, fear, anxiety, inability to sleep, physical pain, property damage, and other losses.

79. Plaintiff Lemonier filed a sworn notice of claim within 90 days after the claims alleged herein arose. The notice was served on the hi by hand on December 12, 2017.

80. Plaintiff Maldonado filed a sworn notice of claim within 90 days after the claims alleged herein arose. The notice was served on the City by hand on December 12, 2017.

81. At least 90 days have elapsed since service of the notices of claim, and adjustment or payment of the claims has been neglected or refused.

### FIRST CAUSE OF ACTION
### Fourth and Fourteenth Amendments - 42 U.S.C. § 1983 - Unlawful Search)
### (Against Defendant Clarke)

82. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

83. At all relevant times, Officer Clarke was acting under color of state law.

84. The Affidavit that Officer Clarke submitted in support of the no-knock search warrant was facially deficient and facially defective.

85. No reasonable officer would have believed that the Affidavit provided information that met the legal requirements for obtaining a no-knock warrant.

86. Defendant Clarke did not at any time have any information that gave rise to any particular basis to be concerned that if the search warrant were executed after knocking and announcing, officer safety would be compromised or contraband would be destroyed.

87. Moreover, upon information and belief, Defendant Clarke withheld material information from the Affidavit that, if it had not been withheld, would have undermined the conclusion based on the totally of the circumstances that a no-knock search was legally justified.

88. In the alternative, if Defendant Clarke was unaware that Plaintiff Lemonier resided in the apartment with her young children and had no criminal record, and/or if Defendant

Clarke was unaware that Plaintiff Maldonado spent a considerable amount of time away from the apartment at issue at 587 Gates Avenue, Apt. 4A, and that it was practicable and not unduly burdensome for the NYPD to monitor the apartment and serve a search warrant at a time when Plaintiff Maldonado was away from the apartment, then Defendant Clarke acted recklessly and with deliberate indifference to whether a no-knock search warrant was legally justified because such information was material and readily available.

89. Defendant Clarke deliberately or recklessly misled the issuing judge regarding whether a no-knock warrant was legally justified, with reckless disregard for the truth.

90. As a direct and proximate result of Officer Clarke's unlawful actions, NYPD officers conducted an unlawful unannounced search of Plaintiff Lemonier's apartment.

91. As a direct and proximate result of this unlawful unannounced search, Plaintiffs suffered damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
*Monell* **Liability**
**(Against the City)**

92. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

93. Upon information and belief, at all relevant times, it was the policy, practice, and/or custom of the NYPD and its police officers to seek no-knock search warrants in narcotics cases without alleging any particularized basis to be concerned about safety or contraband disposal.

94. Upon information and belief, at all relevant times, it was the policy, practice, and/or custom of the NYPD and its police officers that any time a police officer concluded that it was appropriate to obtain a search warrant based on probable cause to believe that narcotics were

located in and/or being sold out of a home, the police officer would as a matter of course seek to obtain a no-knock search warrant without any further analysis of whether there was reasonable suspicion that if the search warrant were executed after knocking and announcing, officer safety would be compromised or contraband would be destroyed.

95. Upon information and belief, at all relevant times, the City systemically failed to train, monitor, and discipline its police officers with respect to the legal requirements for obtaining no-knock search warrants.

96. Specifically, upon information and belief, at all relevant times, the City systemically failed to train, monitor, and discipline its police officers with respect to the clearly established requirement, established by *Richards v. Wisconsin*, 520 U.S. 385 (1997), and its progeny, that a no-knock search warrant may not be obtained in the absence of particularized reasonable suspicion that if the warrant is executed after knocking and announcing, officer safety would be compromised or contraband would be destroyed.

97. This policy, practice, and custom and/or this failure to train, monitor, and discipline were the moving force behind, and proximately caused, the violation of Plaintiffs' constitutional rights described herein.

98. As a direct and proximate result, Plaintiffs have suffered damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**New York State Constitution, art. I, § 12 – Unlawful Search**
**(Against All Defendants)**

99. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

100. Defendant Clarke and the other officers unlawfully entered and searched Plaintiffs' apartment without knocking and announcing themselves without legal justification.

101. The New York Constitution does not permit a police officer from entering a home unannounced unless there is a particularized reason to be concerned about violence or the destruction of contraband.

102. At all relevant times, Defendant Clarke and the other officers were employees of the City of New York and the NYPD acting within the scope of their employment. Defendant City is therefore liable to Plaintiffs under the doctrine of respondeat superior.

103. As a direct and proximate result of this unlawful search, Plaintiffs suffered damages in an amount to be determined at trial

## FOURTH CAUSE OF ACTION
### Trespass to Land - New York Law
### (Against All Defendants)

104. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

105. Defendant Clarke intentionally entered into the apartment located at 587 Gates Avenue, Apt. 4A, unannounced without justification, and he directly and proximately caused other officers to do so as well.

106. At the time of the trespass, Plaintiffs had lawful possession of the apartment.

107. At all relevant times, Officer Clarke was an employee of the City of New York and the NYPD acting within the scope of his employment. Defendant City is therefore liable to Plaintiffs under the doctrine of respondeat superior.

108. As a direct and proximate result of this trespass to land, Plaintiffs suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Trespass to Chattels - New York Law
**(Against All Defendants)**

109. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

110. Defendant Clarke intentionally physically interfered with personal property that was in the lawful possession of Plaintiffs, and he directly and proximately caused other officers to do so as well, resulting in harm to such property.

111. In doing so, none of the officers had consent or legal justification.

112. At all relevant times, Officer Clarke was an employee of the City of New York and the NYPD acting within the scope of his employment. Defendant City is therefore liable to Plaintiffs under the doctrine of respondeat superior.

113. As a direct and proximate result of this trespass to chattels, Plaintiffs suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Conversion - New York Law
**(Against All Defendants)**

114. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

115. Officer Clarke intentionally interfered with Plaintiffs' possession of personal property without consent or legal justification, and he caused other officers to do so as well.

116. Plaintiffs' personal property was damaged, interfering with Plaintiffs' right to possess that property.

117. At all relevant times, Officer Clarke was an employee of the City of New York and the NYPD acting within the scope of his employment. Defendant City is therefore liable to Plaintiffs under the doctrine of respondeat superior.

118. As a direct and proximate result of this conversation, Plaintiffs suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Negligent Screening, Hiring and Retention - New York Law**
**(Against the City)**

119. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

120. Defendant City, through the NYPD, owed Plaintiffs a duty of care to prevent unconstitutional searches of homes and the physical and emotional abuse and property damage that Plaintiffs suffered at the hands of City employees.

121. Upon information and belief, Defendant City, through the NYPD, owed this duty of care to Plaintiffs because under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that Defendant Clarke's conduct was likely to result in injuries to Plaintiffs or similarly situated people.

122. Upon information and belief, Defendant Clarke was unfit and incompetent for his position.

123. Upon information and belief, Defendant City knew or should have known through the exercise of reasonable diligence that Defendant Clarke was not fit for duty and that he lacked basic knowledge about the legal requirements for obtaining no-knock search warrants.

124. Upon information and belief, Defendant City's negligence in screening, hiring and retaining Officer Clarke directly and proximately caused Plaintiffs' injuries.

125. As a direct and proximate result of this negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

    a.    Awarding compensatory damages for all physical and emotional distress, humiliation, pain and suffering, family and social disruption, property damage, and other harm, in an amount to be determined at trial;

    b.    Awarding punitive damages in an amount to be determined at trial;

    c.    Awarding pre- and post-judgment interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    d.    Awarding such other and further relief as this Court may deem just and proper.

Dated: New York, New York
         November 19, 2018

By:    /s/
Eric Hecker (EH 0989)
John R. Cuti (JC 3365)
Daniel Mullkoff (DM 4602)

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600
ehecker@chwllp.com
jcuti@chwllp.com
dmullkoff@chwllp.com

*Attorneys for Plaintiffs*